In the Matter of DAVEGA-CITY RADIO, INC., Appellant, against STATE LABOR RELATIONS BOARD, Respondent.

**14**

Argued April 21, 1939; decided July 11, 1939.

*Walter Chalaire, Miner W. Tuttle, Walter C. Lundgren* and *Soia Mentschikoff* for appellant.

16

*Burton A. Zorn* and *Bernard Jaffe* for respondent.

FINCH, J. This is an appeal by an employer from an order of the Appellate Division unanimously affirming an order of Special Term directing the employer to offer reinstatement to two discharged employees.

After an investigation by the State Labor Relations Board of charges filed with it by the Retail Employees' Union, Local 830-C. I. O., the Board issued its complaint alleging that the employer had been engaging in unfair labor practices within the meaning of section 704, subdivisions 1, 3, 4, 5 and 10, of the State Labor Relations Act (L. 1937, ch. 443). Specifically, the employer was charged with forming a company union, requiring employees to join the company union, interfering with employees in the exercise of their rights of self-organization, and discharging certain employees because of their union activities. By its decision the Board found that the employer was guilty of fostering a company union and that it unlawfully discriminated against three employees by discharging them for their union activities. The Board ordered that the employer cease its connection with the company union, desist from interfering with the attempts of the employees to form their own organization, and that it offer to reinstate with back pay the three employees unlawfully discharged. Thereafter the employer moved at Special Term to vacate the orders of the Board. Special Term affirmed the findings of the Board as to the unlawful discharge of two of the three

employees, remitted the proceeding for further hearing with regard to the third employee, remitted the proceeding in regard to the question of compensating the employees for unpaid wages, and made no order with respect to the other questions on the ground that they had since become moot. This order was affirmed on appeal to the Appellate Division without modification, so that the only question here is the validity of the order of the Board and the decisions of the courts requiring the reinstatement of the two employees.

The appeal to this court is taken as of right on the ground that a substantial constitutional question is involved, as will presently appear. The fact that we decide the constitutional question against appellant does not make it the less a ground for appeal. No appellant should be required to insure that his answer to the constitutional question will be adopted by the court.

The argument presented by the employer on this appeal may be summarized as follows:

Although it is engaged in the business of selling at retail, it makes substantial purchases and sales in interstate commerce, and is thereby brought within the scope of the National Labor Relations Act (U. S. Code, tit. 29, ch. 7). Article VI of the United States Constitution provides that the laws of the United States, enacted pursuant to the Constitution, are part of the supreme law of the land, and, therefore, the State Labor Relations Act, which covers the same ground as the National act, is not applicable to appellant since the National act must be held to occupy exclusively the field. In any event, the language of the State law limits expressly its own operation by that of the National act, and hence, according to its own terms, it does not attempt to protect appellant's employees.

We come then to a decision of the questions presented.

*First.* Whether appellant's labor relations are within the scope of the National Labor Relations Act.

Appellant's business is that of selling radios, refrigerators, sporting goods and miscellaneous merchandise. In 1936 the total purchases by appellant amounted to $4,385,000. Of

this amount $2,706,000 was purchased by appellant from manufacturers located outside of the State of New York. In that same year appellant's total sales were approximately $7,350,000. Of these $1,200,000 consisted of sales in interstate commerce. Thus, approximately sixty-one per cent of appellant's purchases and seventeen per cent of appellant's sales involved interstate transactions. It may be observed that most of appellant's purchases are stored in its New York warehouse for a period of from two weeks to several months before being resold to appellant's retail customers. These in brief are the facts upon which appellant relies to establish that it is subject to the jurisdiction of the National Labor Relations Board.

It may well be that appellant's activities are sufficient to bring it within the national jurisdiction based on the commerce clause. (*Consolidated Edison Co.* v. *National Labor Rel. Bd.*, 305 U. S. 197; *National Labor Rel. Bd.* v. *Fainblatt*, 306 U. S. 601. Cf. *U. S.* v. *Rock Royal Co-operative, Inc.*, 307 U. S. 533.) To bring to full fruition a legal principle often requires its application in many cases. "In maintaining the balance of the constitutional grants and limitations, it is inevitable that we should define their applications. in the gradual process of inclusion and exclusion." (*Santa Cruz Fruit Packing Co.* v. *National Labor Rel. Bd.*, 303 U. S. 453, 467.) We do not determine this point since we reach the conclusion that the order below should be affirmed even though appellant's labor relations be amenable to the jurisdiction of the National Labor Relations Board.

*Second.* Whether by the operation of article VI of the United States Constitution the mere existence of the National Labor Relations Act ousts the State Labor Relations Board from jurisdiction in the case at bar.

This question may be resolved, based on its application to different factual situations, as follows: Where both the National and State acts are identical in aims and requirements; where they are in conflict; and there is a middle ground where the State and National acts are identical in

aims and requirements, but the State act adds requirements in addition to, but in harmony with, those of the National act. The case at bar involves statutes within the first category.

We may eliminate as non-existent in the case at bar any claim that the State Labor Relations Board is attempting to act through the enforcement of the National Labor Relations Act in the same manner that State courts often enforce causes of action created by Federal statutes.

We may further assume that the police power of the State would warrant the application of the State Labor Relations Act to the labor relations of appellant if the National Labor Relations Act were not in existence. (*Minnesota Rate Cases*, 230 U. S. 352, 408.) On the other hand, it has long since been settled that where there is a *conflict* between a statute enacted by Congress pursuant to its delegated powers, *e. g.*, the regulation of interstate and foreign commerce, and a law adopted by a State in the exercise of its police power, then the former prevails. (*Gibbons* v. *Ogden*, 9 Wheat. [U. S.] 1.) If effect were given to the contrary directions of the State law, then the National act would no longer be the supreme law of the land, as is required by article VI of the Constitution. But where a State act is enforced in the absence of National legislation, or a State act is enforced where there co-exists consistent National legislation, then article VI is complied with, since the supremacy of the laws of the United States is in no manner impaired. "Since there is nothing in the State law which is inconsistent with, or could conceivably interfere with the operation or enforcement of, the Federal law, the statute of Missouri was not superseded." (BRANDEIS, J., *Dickson* v. *Uhlmann Grain Co.*, 288 U. S. 188, 200.)

The present proceeding is concerned with the duty imposed upon the employer not to discharge its employees for certain causes. The measure of the employer's duty with regard to the employees who have been accorded relief below is the same under the Federal and the State statutes. In so far as is pertinent here, both the National

Labor Relations Act and the State Labor Relations Act provide that employees shall have the right to bargain collectively and to join labor organizations of their own choosing, and the employer may not discriminate against any employee in order to discourage or circumvent the realization of collective bargaining. (49 U. S. Stat. 452; §§ 7, 8 [subds. 1, 3]; U. S. Code, tit. 29, ch. 7, §§ 157, 158 [subds. 1, 3]; N. Y. Labor Law [Cons. Laws, ch. 31], §§ 703, 704 [subds. 5, 10].) The two statutes are not only alike in their provisions but are almost identical in their language. It has been observed that the New York act is the State's equivalent of the National act. (*Consolidated Edison Co.* v. *National Labor Rel. Bd., supra,* at pp. 222, 223.) If the employer were to obey the mandate of the State rather than that of the National act the result would be precisely the same.

From a study of authorities it does not appear that the National Labor Relations Act *ipso facto* precludes the State legislation applicable to the same situations.

In *Dickson* v. *Uhlmann Grain Co.* (*supra*) the court upheld a defense that the contract sued upon was illegal under the Missouri bucket shop law, even though the contract was executed upon grain exchanges located in Chicago and not only were subject to but legal under the Federal Grain Futures Act (42 U. S. Stat. 998). The court pointed out that the State act was not inconsistent with the Grain Futures Act and did not interfere with the object or the enforcement of the Federal law. Similarly the New York State Labor Relations Act is in no way inconsistent with the provisions of the National Labor Relations Act, and the New York law does not legalize any transaction which the National act has denounced. In the case at bar certain conditions in the contract of employment are imposed by operation of law. That this is accomplished not only by the National statute but also by the State law is no objection to the operation of the latter since it would not interfere with the enforcement of the former. Under the *Dickson* case it would be proper for New York to enumerate certain causes for which an employee may not be discharged in addition

to the causes listed in the National act; yet appellant contends that the New York law may not forbid an employee's dismissal for the same causes for which the National act forbids dismissal. (Cf. *Missouri, Kansas & Texas Ry.* v. *Haber*, 169 U. S. 613.)

In *Crossman* v. *Lurman* (192 U. S. 189, 199) the court applied the New York statute prohibiting the sale of adulterated food to goods imported by the seller although Congress had enacted a law "prohibiting the importation of adulterated articles of food or drink."

On the other hand, in *Southern Ry. Co.* v. *Railroad Comm. of Indiana* (236 U. S. 439) it was held that an Indiana statute regulating the equipment of railroad cars was inoperative because in conflict with the Federal Safety Appliance Act. The operation of the State Labor Relations Act in the case at bar does not impose greater or less or different penalties, nor does it impose a greater or less stringent or different standard of conduct.

Appellant, to establish the proposition that when Congress has acted in a field within its competence State legislation is necessarily superseded, relies on *Napier* v. *Atlantic Coast Line R. R. Co.* (272 U. S. 605); *Oregon Washington R. R. & Nav. Co.* v. *Washington* (270 U. S. 87); *Erie R. R. Co.* v. *New York* (233 U. S. 671); *Northern Pacific Ry. Co.* v. *Washington* (222 U. S. 370); and *Southern Ry. Co.* v. *Reid* (222 U. S. 424).

To the foregoing cases may be added the *Second Employers' Liability Cases* (223 U. S. 1, 55), where the court declared, "And now that Congress has acted, the laws of the states, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is." But in all the cases in which such or similar language is to be found it is clear that the problem is one of State regulations whose requirements *differ* from those of the acts of Congress.

Appellant argues that it is the intent of Congress, as expressed in the National Labor Relations Act, to preclude consistent State regulation of the same subject-matter and

that this intent is purportedly established by the absence of a saving clause in the National act and by the fact that the National Labor Relations Board is given exclusive jurisdiction to enforce the terms of that act. The significance of the lack of a saving clause in favor of State legislation is considerably diminished by the fact that there was no like legislation in existence when Congress adopted the National act. Furthermore, where the result would be to curtail what is otherwise an exercise of the State's police power, such an intent is not to be inferred, but must be clearly manifested. (*Kelly* v. *Washington*, 302 U. S. 1; *Reid* v. *Colorado*, 187 U. S. 137.)

That the National Labor Relations Board is given exclusive jurisdiction under the National act is of significance only in fixing the appropriate agency to enforce the National act, and is not relevant to the question whether a consistent State law may co-exist with a National act.

We reach the conclusion, therefore, that the State Labor Relations Board may enforce the State act at least until such time as it is ousted by the exercise by the National Labor Relations Board of its jurisdiction under the National act. At what point the State Board would be displaced need not be considered. (Cf. *Lake Erie, A. & W. R. R. Co.* v. *Public Utilities Comm.*, 109 Ohio St. 103.) It is sufficient that in the present case the National Board has not acted. Indeed, the record shows that the appellant was informed by the Regional Director of the National Board, albeit not by formal order, that the Board would not assume jurisdiction.

Appellant seeks to create a twilight zone, in which it may disobey its plain duty, required by both statutes, upon the pretext that its conduct is dictated by the other statute. In so far as is possible within the framework of our Federal form of government, such a result should be avoided. To permit State enforcement of a State law consistent with a Federal law on the same subject until such time as the appropriate ·Federal agency asserts its own jurisdiction in no way lessens the supremacy of the

national laws as required by article VI of the Constitution.

The same question was considered in *Wisconsin Labor Relations Board* v. *Rueping Leather Co.* (228 Wis. 473), and the same decision was there rendered.

*Third.* Whether the State Labor Relations Act, by its own terms, excludes its application to the appellant's employees. New York Labor Relations Act (Labor Law), section 715, provides:

" Application of article. The provisions of this article shall not apply to the employees of any employer who concedes to and agrees with the board that such employees are subject to and protected by the provisions of the national labor relations act. * * *."

Appellant contends that since its employees are protected by the National act, the State law, because of the above provision, does not apply. Such is not the language of the statute. It does not exempt from its jurisdiction all who are subject to the National act but only those as to whom the employer and the Board agree are subject to the National act. In the case at bar the Board has not agreed with the employer that the latter is subject to the National Labor Relations Act. Hence, appellant is not exempted by the operation of this section.

If an employer, by merely making claim that it was subject to the jurisdiction of the National Labor Relations Board, could oust the State Labor Relations Board from jurisdiction, then, if for any reason the National Labor Relations Board should decline jurisdiction, the employer might be freed from regulation by either agency. This would not seem to be a reasonable construction of section 715.

The order should be affirmed, without costs.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Order affirmed.