Shafer Petition.

Argued March 26, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

reargument refused May 10, 1943,

*Chas. B. Prichard,* with him *James A. Geltz,* of *Prichard, Lawler, Malone & Geltz,* for appellant.

*Jason Richardson,* with him *O. K. Eaton,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, April 22, 1943:

These are two appeals, argued together, from orders of the Court of Common Pleas of Allegheny County affirming two parts of the decisions and orders rendered on June 4, 1942, by the Pennsylvania Labor Relations Board.

In one of the matters before it, the Board found that the appellant employer had been guilty of unfair labor practices. After a review of the entire record, we agree with the court below that the findings of fact made by the Board are supported by substantial and legally credible evidence, and consequently supported its conclusion and order. We, therefore, affirm the order in Appeal No. 26.

The second appeal raises a question of statutory construction. The appellee union filed a petition with the Board under Section 7(c) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended by the Act of June 9, 1939, P. L. 293, Section 1, 43 PS sec. 211.7, for the investigation and certification of bargaining representatives. Therein it was stated: *"A secret ballot of employes shall be taken within twenty days after such request is filed".* The appellant employer

filed an answer, joining in the prayer of the petition and in the request for a secret election. At the hearing, in which the matters raised by the union's two petitions were combined, testimony was taken by the Board on the question of representation. Despite the request of both parties to the controversy for a secret ballot, the Board certified the union as bargaining representative without election. This action furnishes the basis of the employer's appeal in No. 27. In its decision dismissing exceptions, the Board, quite inexplicably, stated "no request for an election has been filed by Amalgamated", and held that appellant had no standing to request an election because he had been found guilty of unfair practices. The court below, on appeal, dismissed the erroneous statement of the Board as of no moment, because the union, having been certified, did not press its request for election, and sustained the Board's conclusion that appellant had no right to make such request.

We cannot accept the learned court's interpretation of the Act. The Pennsylvania Labor Relations Act of 1937 was obviously imitative of the National Labor Relations Act of July 5, 1935, sometimes designated the Wagner Act, ch. 372, 49 Stat. 449, 453, 29 USCA 151, 159. The latter Act provided, Section 9 (c) : "Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation the Board shall provide for an appropriate hearing upon due notice, . . . *and may take a secret ballot of employees or utilize any other suitable method to ascertain such representatives.*" (Italics ours.)

In almost identical language the Pennsylvania Act of 1937 provided, Section 7 (c) : "Whenever a question arises concerning the representation of employes the board may investigate such controversy and certify to the parties, in writing, the name or names of the repre-

sentatives who have been designated or selected. In any such investigation, the board shall provide for an appropriate hearing upon due notice, . . . and *may take a secret ballot of employes or utilize any other suitable method to ascertain such representatives.*" (Italics ours.)

Under both Acts, therefore, it was entirely discretionary with the Board, in certifying a bargaining representative, to refuse or order an election. The wording of the federal statute has not changed. But although the National Labor Relations Board still possesses its absolute discretion in this regard, it has determined on the basis of much experience that policy dictates the holding of an election in any case where it is sought by a party to the controversy, whether such party be an employer or a petitioning union. The reasons for this policy are sound. It has become clear that workers favor secret ballots as the most democratic method of selecting their representatives, free from the coercion of their employer or the union seeking to organize them. It has become clear that bargaining is facilitated, and better relations established, where, by a fair election, the employer has been conclusively shown that his employees have selected the collective bargaining agent. In the *Cudahy Packing Company Case,* 13 N.L.R.B. 526 (1939), involving a dispute between two unions seeking to obtain certification, the National Labor Relations Board expressed this policy. And, in *Armour & Company's Case,* 13 N.L.R.B. 567 (1939), where but one petitioning union was involved and the employer requested an election, the Board said: "Although in the past we have certified representatives without an election upon a showing of the sort made by this record, *we are persuaded by our experience* that, under the circumstances of this case, any negotiations entered into pursuant to a determination of representatives by the Board will be more satisfactory if all disagreement between the parties regarding the wishes of the employees has been as far as possible,

eliminated . . ." A secret ballot of the employees was therefore ordered.

Since 1939 the Board has adhered faithfully to the policy expressed in these cases. It is significant that *in the same year,* the Pennsylvania Labor Relations Act was amended to limit the discretion of the State Labor Board in certifying representatives without election.

Section 7(c), as amended by the Act of 1939, now provides: "Whenever a question arises concerning the representation of employes the board may, *and, upon request of a labor organization, or an employer who has not committed an act herein defined as unfair labor practice, or any group of employes in an appropriate unit representing by petition thirty per centum or more of the employes of that unit, shall* investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected. In any such investigation, the board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section eight, [unfair labor practices] or otherwise, and may utilize any suitable method to ascertain such representatives, *except that if either party to the controversy so requests, a secret ballot of employes shall be taken within twenty days after such request is filed. Any certification of representatives by the board shall be binding for a period of one year, or for a longer period if the contract so provides, even though the unit may have changed its labor organization membership."* (Italics ours.)

The purpose of the amendments is manifest. The legislature intended that it should be *mandatory* upon the Board to *institute an investigation* of questions concerning representation at the request of (1) a labor union, (2) a "fair" employer, or (3) thirty percent of the employees in the bargaining unit. The denial to "unfair" employers of the right to instigate an investigation by the Board is consistent with the amendment to Section 10 which was adopted at the same time.

The second sentence of Section 7(c) relates to the conduct of the investigation, hearing and determination *after* it has been properly instituted as provided in the first sentence. It is with respect to this provision that we differ from the court below. In the second sentence it is provided that the Board shall have no discretion to refuse a secret ballot within twenty days if *"either party to the controversy"* so requests. Although the legislature, in the first sentence of Section 7(c) and in Section 10.1 placed express qualifications upon the rights of those who had been found guilty of unfair labor practices, it made no such qualification in the second sentence of Section 7(c) regarding those who should have the right to request a secret ballot. Although an "unfair" employer has no right, under the first sentence, to initiate an investigation concerning representation, he may, as a *party to the controversy* after it has been properly instituted, demand a secret ballot. The intention of the legislature is too clear to be disregarded, and it must be given effect. The error of the court below lay in its failure to distinguish between the purpose of the two sentences, and to see that in the second sentence the legislature made no distinction between "fair" and "unfair" employers.

The policy of the legislature of Pennsylvania, expressed in 1939, corresponds to the policy of the National Labor Relations Board, expressed in 1939, regarding secret ballots for representatives. The statute recognizes, as did the National Labor Relations Board, that harmony in bargaining relations between a doubting employer and a union cannot be achieved unless the employer is satisfied that his employees have chosen the union by the democratic process of a properly supervised election. The purpose of the Labor Relations Act is, inter alia, to provide a method whereby employer and employee representative may be brought together by contract. That purpose is best served, and the interests of the individual employees are safeguarded, by an election in cases where legitimate doubts as to majority representation exist.

In the present case the Board had no authority whatever to ignore the request of the union for a secret ballot within twenty days. Under the Act, it was *mandatory* upon the Board to comply with that request. Although the request was not pressed, it was not withdrawn. Certainly, it was futile for the Board to deny that it was made. The employer also requested an election. Under the Act, as amended, the Board had no discretion to refuse. Regardless of the manner in which it has hitherto construed its powers, it must comply with the statute of which it is a creature. It has no powers otherwise. The order of the court below in Appeal No. 27 must therefore be reversed.

The order of the court below at No. 2683, July Term, 1942 (Appeal No. 26, March Term, 1943), is affirmed. The order of the court below at No. 2682, July Term, 1942 (Appeal No. 27, March Term, 1943), is reversed and the record is remitted to the Pennsylvania Labor Relations Board for further proceedings consistent with this opinion.

Costs in both appeals are to be equally divided between appellant and appellee.